(56 South. 366.)

No. 18,808.

POLICE JURY OF PARISH OF WEST FE-
LICIANA v. STAFFORD.

(June 26, 1911.    Rehearing Denied Oct. 30,
1911.)

*(Syllabus by the Court.)*

1. COUNTIES (§ 177*)—PARISHES—ISSUANCE OF
   BONDS—CONSTITUTIONAL PROVISION.

   Article 281 of the Constitution prescribes
   the conditions upon which and the means by
   which alone parishes and other public bodies
   mentioned therein can obtain authority to issue
   negotiable bonds, and by necessary implica-
   tion and in express terms prohibits the issu-
   ance of such bonds upon any other conditions
   than those so prescribed.

   [Ed. Note.—For other cases, see Counties,
   Dec. Dig. § 177.*]

2. COUNTIES (§ 178*)—PARISHES—ISSUANCE OF
   BONDS—CONSTITUTIONAL PROVISIONS.

   The General Assembly has no power to au-
   thorize that which the Constitution prohibits,
   and hence cannot authorize the police jury of a
   parish, without the consent of the property tax-
   payers, obtained as required by article 281 of
   the Constitution, to issue negotiable bonds for
   the funding of a floating debt, incurred with-
   out such consent; and Act 129 of 1910, pur-
   porting to authorize the police jury of the
   parish of West Feliciana so to do, is unconsti-
   tutional and void.

   [Ed. Note.—For other cases, see Counties,
   Dec. Dig. § 178.*]

3. COUNTIES (§ 177*)—PARISHES—ISSUANCE OF
   BONDS—CONSTITUTIONAL PROVISIONS.

   The granting by article 281 of the Consti-
   tution to a parish of permission to incur a
   bonded debt upon certain prescribed conditions
   does not compel or authorize the inference that
   it is thereby intended to prohibit the incurring
   of any debt whatever, save on compliance with
   the same conditions.

   [Ed. Note.—For other cases, see Counties,
   Dec. Dig. § 177.*]

Provosty, J., dissenting.

Appeal from Twenty-Fourth Judicial Dis-
trict Court, Parish of West Feliciana; George
J. Woodside, Judge.

Action by the Police Jury of the Parish
of West Feliciana against F. M. Stafford.
From a judgment for plaintiff, defendant ap-
peals. Reversed, and suit dismissed.

Munson & Kilbourne, for appellant. S. Mc-
C. Lawrason and Joseph L. Golsan, Dist.
Atty., for appellee.

Statement of the Case.

MONROE, J.    This is a suit to compel
specific performance of a contract whereby
F. M. Stafford agreed to buy certain bonds
issued by the parish of West Feliciana, pro-
vided they should be found to have been law-
fully issued. The defense is that Act 129 of
1910, under the supposed authority of which
the bonds were issued, contravenes articles
48 and 281 of the Constitution.

The act referred to is entitled:

"An action to authorize the police jury of
the parish of West Feliciana to fund the float-
ing indebtedness of said parish by issuing bonds
and levy [ing] taxes to pay the principal and in-
terest of said bonds, and to provide for the
disposition of said bonds, by exchange or sale,
and for the payment of the principal and in-
terest of said bonds."

There is, then, a recital to the effect that
notice of the intention to apply for the pas-
sage of the act had been given, after which
it is provided that the police jury be au-
thorized to issue serial negotiable bonds to
the amount of $30,000, or so much thereof as
may be necessary to fund the floating debt of
the parish; that it be authorized to levy and
collect a tax, not exceeding 2½ mills, pro-
vided that such tax, together with the taxes
levied for ordinary parish purposes, shall not
in the aggregate exceed 10 mills; that the
interest to be paid on the bonds shall not
exceed 6 per cent.; that the police jury may
issue any portion of the bonds in settlement
of valid indebtedness of the parish, or dis-
pose, for cash, of the whole amount of bonds
necessary to fund the whole floating debt;
that the bonds shall not be sold for less than
par, and there are some other provisions re-
lating to the form, denomination, and ma-
turity of the bonds. Acting under said stat-
ute, the police jury passed an ordinance de-
claring the floating debt of the parish to be
$22,500, authorizing the issuance of 45 bonds
of $500 each, bearing interest at 6 per cent.
and payable in series of two bonds annually
for the funding of said debt, levying a tax

of 1¼ mills within the limits of the 10-mill tax for the payment of the same, and dedicating it thereto. And further action was taken, as a result of which the bonds were prepared, and, after advertisement and competition, adjudicated to Mr. Stafford, who bid $700 in excess of the par value, and deposited a certified check for part of the amount, as is customary in such cases. Plaintiff' shows by the testimony of the president of the police jury and other witnesses that the amount of the floating debt is as declared in the ordinance mentioned; that the assessed valuation of the taxable property of the parish is $2,044,961, from which the 10-mill tax produces approximately $20,449.61, to which may be added $2,400 derived from licenses, making a total revenue of $24,449.-61; that the current necessary expenses of the parish amount to $16,242, and that, adding the amount needed for the bonds, the aggregate estimated expenditures will not exceed say $18,592. The witnesses seem to think, however, that the parish is unable to handle its debt, and that the issuance of bonds, as proposed, is highly desirable, if not absolutely necessary.

### Opinion.

[1] The lawmaking power of the sovereign people of the state of Louisiana is limited only by the restrictions imposed by the Constitution of the United States, and by the incapacity of the people themselves to part with attributes of sovereignty such as the police power, the power of eminent domain, and the taxing power. The people, by means of a written Constitution, have established a government, and have conferred upon one of its departments such lawmaking power as they possess, subject to the limitations contained in the grant, and the question here presented is whether that department—the General Assembly—has confined itself within, or has exceeded, those limitations in enacting a special statute authorizing the police jury

of the parish of West Feliciana without the consent of the property taxpayers to issue negotiable bonds of the parish for the funding of a parish debt previously contracted without such consent.

Article 232 of the Constitution declares that:

"Except as otherwise provided in this Constitution, no parish, municipal, or public board tax, for all purposes whatsoever, shall exceed * * * ten mills. * * * *"

And it then proceeds "otherwise" to provide, as an exception to the rule thus established, that, where it is desired to give additional support to public schools or to erect or to construct any works of permanent public improvement, "the title to which shall be in the public, any parish, municipal corporation, ward or school district may levy a special tax" (which is unlimited either as to the rate or the time for which it is to run), "whenever the rate of such increase and the number of years it is to be levied and the purpose or purposes for which the tax is intended shall have been submitted to a vote of the property taxpayers of such parish, municipality, ward or school district, entitled to vote under the election laws of the state, and a majority of the same, in numbers and in value, voting at such election, shall have voted therefor."

Article 270 provides another exception for cases where it is desired to give aid to works of public improvement or railway enterprises, the title to which is not in the public, and the requirements are more stringent than those demanded by article 232, in this: that the special tax must be approved, not only by a majority in number of all the property taxpayers entitled by law to vote (instead of a majority of those actually voting, as in article 232), but also by a majority in value of all the property taxpayers, including those not entitled by law to vote under other circumstances. It is provided that no taxpayer shall be entitled to vote unless he has been

assessed on property in the parish for the year preceding the election; and, further, that the special tax in such cases shall not exceed 5 mills nor extend for a longer period than 10 years. Neither of the articles thus referred to contains any provision in regard to the incurring of debts and the issuing of negotiable bonds therefor, and, if the Constitution had made no provision as to that, the General Assembly would undoubtedly be authorized to regulate it by such legislation in conformity to other provisions of the Constitution as it might see fit to enact. The framers of the Constitution appear, however, to have been cognizant of the situation, and to have been aware of the fact that articles 232 and 270 created a situation somewhat similar to that created by articles 209 and 242 of the Constitution of 1879, which evidently was not considered satisfactory, and article 281, which has no prototype in the Constitution of 1879, was made part of the present Constitution. That article deals exclusively with the subject of the creation of bonded debts by municipalities and parishes and certain other special public corporations, and, as last amended and re-enacted, reads, in part, as follows:

"Art. 281. Municipal corporations, parishes, school districts and drainage and sewerage districts, the city of New Orleans excepted, when authorized to do so, by a vote of a majority in number and amount of the property taxpayers, qualified as electors under the Constitution and laws of this state, voting at an election held for that purpose, after due notice of said election has been published for thirty days in the official journal of the municipality or parish, and, where there is no official journal, in a newspaper published therein, may incur debt, and issue negotiable bonds therefor, to the extent of one-tenth of the assessed valuation of the property within said municipal corporation, parish, school, drainage, or sewerage, districts, as shown by the last assessment made prior to the submission of the proposition to the property taxpayers as above provided, and may be authorized by the property taxpayers, voting at said election, to levy and assess special taxes upon property subject to taxation in the parish, drainage district, corporation, school or sewerage districts; provided, that said taxes so imposed do not exceed five mills on the dollar of the assessed valuation in any one year nor run for a greater number of years than the number named in the proposition submitted to the taxpayers. No bonds shall be issued for any other purpose than stated in the submission of the proposition to the taxpayers and published for thirty days as aforesaid, nor for a greater amount than therein mentioned; nor, shall such bonds be issued for any other purpose than for paving and improving the streets, roads and alleys, purchasing or constructing systems of waterworks, sewerage, drainage, lights, public parks and buildings, bridges and other works of public improvement, the title to which shall vest in the municipal corporation, parish, school, drainage or sewerage districts, as the case may be; nor, shall such bonds run for a longer period than forty years from their date, or bear a greater rate of interest than five per cent. per annum, or be sold, by the municipal corporation, parish, school district, drainage or sewerage district, issuing same for less than par. The municipal corporation, parish, school district, drainage or sewerage district issuing such bonds shall provide for the payment of the interest, annually or semiannually, and the principal thereof at maturity; provided that the total issue of bonds by any municipality, parish, school, or sewerage, district, for all purposes, shall never exceed ten per cent. of the assessed value of the property in such municipality, parish, school, or sewerage, district; provided, that municipal councils shall have authority to create, within their respective limits, one or more sewerage districts. * * * "

The balance of the article as amended pursuant of Act No. 122 of 1906 relates exclusively to drainage districts, and need not be here quoted.

It thus appears that after limiting the rate of taxation, "except as otherwise provided in this Constitution," and after otherwise providing that, in certain cases and upon certain specified conditions, special taxes may be levied in excess of the limit so established the Constitution prescribes, with great particularity, the conditions upon which a bonded debt may be incurred, and then, not resting upon the implied prohibition against the issuance of bonds upon, or under, any other conditions than those prescribed, proceeds to express the same prohibition in precise terms.

The learned counsel for plaintiff say in their brief:

"The authority given parishes in that article of the Constitution is not necessarily a restriction on the powers of the Legislature to give them such authority in other cases, but is rather a mandate to the Legislature, an instruction that, for special purposes, the parishes may levy special taxes and issue bonds based thereon on being authorized by a vote of the taxpayers, electors, a power or right which is conferred on them, and with which they would not have been clothed but for the article, except as the Legislature might grant it. * * * It relieved parishes * * * from applying to the Legislature for permission to levy special taxes for certain purposes, and, if they wished, to issue bonds predicated thereon, the initiative being with the parishes, * * * and depending only on a vote of the taxpayers, qualified electors, and the purpose of the tax. If the Constitution had intended to go farther, and take away from the Legislature a power universally recognized, it would plainly have said so."

As we have seen, however, the power to levy special taxes for the support of schools and for the erection and construction of works of public improvement had already been granted to the parishes (to be exercised upon the initiative and with the approval of the property taxpayers), and it cannot be supposed that article 281 was intended to again confer that power. But the question of the incurring of bonded debts had been left untouched, as it had been left untouched by the Constitution of 1879, and it is with that question alone that article 281 may be said to deal, since the other provisions therein contained are merely incidental and subsidiary thereto, the taxes being authorized only in connection with, and for the purposes of, the debts to be incurred and bonded. As the article provides that, when authorized by the taxpayers so to do in the manner prescribed, a parish may incur debt and issue bonds therefor, the implication is a necessary one that the debt for which bonds are to be issued is not to be incurred under any other conditions than those which are thus prescribed; for to say that a debt may be incurred and bonded upon other conditions is to say that, though the Constitution has annexed conditions to a grant of power which it makes to the parishes, the

General Assembly may relieve the parishes of the obligation to comply therewith, and, if that were true with regard to the conditions of the grant contained in article 281, it would be equally true with regard to the conditions of the grants contained in articles 232 and 270, and by the authority of the General Assembly the different parishes, municipal corporations, etc., could incur debts without the consent of the property taxpayers in aid of railroads, or for any other purposes, and could, without such consent, issue negotiable bonds therefor to any amount, maturing at any time in the future, and bearing any rate of interest, and the articles of the Constitution which have been mentioned and which deal with those subjects would be superseded, as to the grants contained in them, and nullified, as to the prohibitions, by acts of the General Assembly. The implied prohibition thus referred to is, as we have noted, confirmed by express prohibitions, formulated in positive and unambiguous terms.

[2] In regard to them, plaintiff's learned counsel say:

"If the Constitution had intended that bonds, other than those mentioned in article 281, should never be issued, the article would have said so. The provisions contained in the article that 'no bonds shall be issued for any other purpose than stated in the submission of the proposition to the taxpayers,' and limiting the purpose to certain designated works of public improvement, the title to which shall vest in the parishes, etc., refers to bonds of the character provided for in the article, based on special taxation."

The article in question deals, as we have stated, with the subject of the creation by municipal corporations, parishes, etc., of bonded debts, and prescribes the manner in which such debts may be created, and the omission to provide for the levy of any tax for their payment would, as we think, have rendered the other provisions of the article inoperative and useless. We cannot, therefore, concur in the view that in providing such a tax the article leaves it open to the

municipal corporation, parishes, etc., acting under the authority of the General Assembly to issue bonds, the issuance of which it prohibits; and, according to our view, the bonds provided for by the article are the only bonds which the Constitution authorizes the political subdivisions mentioned to issue, and the issuance of any other bonds by them is prohibited, not only by obvious and necessary implication, but, in as plain and unambiguous language as could well be employed. It is argued that there has been a legislative construction which sustains the view presented on behalf of plaintiff, and we are referred to a number of statutes as supporting the argument. The first is the Act 129 of 1910, which we are now considering. The next is Act 39 of 1908, which is very much like Act 129 of 1910, and purports to authorize the parish of East Carroll to bond its floating indebtedness on the basis of an estimated future surplus from the 10-mill tax by the issuance of $25,000 of 6 per cent. bonds, to be disposed of at not less than 98 cents and to mature at such dates as may be determined by the police jury. The others are acts which were passed prior to the adoption of the present Constitution, and, for the reason that there was no article in that Constitution similar to article 281 of the present Constitution, they have no bearing on the question here at issue. So far as that question is concerned, therefore, our attention is called to but two acts indicating a legislative interpretation of the constitutional law applicable thereto, one of which acts, passed in 1908, does not appear to have been subjected to judicial scrutiny, and the other of which, passed in 1910, is now before us. Under such circumstances, the legislative construction referred to cannot be accorded much weight, since the responsibility of interpreting the Constitution devolves upon the judiciary, and, though the courts may in cases of doubt yield their views to legislative interpretations of long standing and which have been generally acquiesced in, they cannot do so in cases of manifest error; and, where an erroneous interpretation of a clear and unambiguous constitutional provision is of recent date, it is entitled to no weight whatever. 8 Cyc. pp. 737, 738 (citing Fairbank v. U. S., 181 U. S. 283, 21 Sup. Ct. 648, 45 L. Ed. 862, and other cases).

Counsel for plaintiff, referring to the members of the police jury, plaintiff herein, say:

"Their motives [for desiring to fund the debt] can be appreciated when we consider that, after obligating the parish for expenditures for public improvements—an expensive courthouse and bridges—the revenues of the parish fell off largely by loss of liquor and town licenses, and then the plague of the boll weevil came as a climax to make the burden upon the taxpayer almost insupportable. To preserve the credit of the parish, and, at the same time, give relief to the taxpayer in the day of his most pressing need by distributing the payment of accumulated debt over a number of years, a debt to which it is not injustice to the future taxpayer to require him to contribute, as he will enjoy the benefit of the public improvements which were the occasion of practically all of it, was a sensible and praiseworthy action on the part of the police jury."

We entertain no doubt, therefore, that the present situation was brought about by circumstances which the most prudent financiers may well have failed to anticipate, and we are not in a position to say that the plan proposed, of issuing bonds against the estimated surplus for the next 22 years, to be derived from the general fund tax, may not in this particular case be a good one, or that it might not be worked out successfully, if it were authorized by law; but the fundamental law, as we have seen, prohibits the issuance of bonds by parishes, save under the conditions prescribed, which conditions the plaintiff was unable to comply with, and from compliance with which the General Assembly had no power to release it by any legislation, whether general or special.

It is said by the learned counsel that:

"The issuance of certificates, bearing interest, representing and based on the pledge of future revenues provided for by the Legislature (Act 32 of 1902, p. 39), has never been questioned,

though they can hardly be differentiated from bond issues in effect."

Act 32 of 1902 amends and re-enacts Act No. 30 of 1877 (Extra Sess.), and provides, in substance, as follows:

"Section 1. * * * That no police jury of any parish nor any municipal corporation * * * shall, in any one year, make any appropriation of, approve any claim against, or make any expenditure from, the annual revenue for that year, which appropriation, approved claim of [or] expenditure shall, separately or together with other appropriations, approved claims or expenditures, be in excess of the estimated revenue of that year.

"Sec. 2. * * * That the revenues of the several parishes and municipal corporations * * * of each year shall de dedicated as follows: First, all statutory charges shall be paid from the respective funds upon which they are imposed; second, all charges for services rendered annually under time contracts; third, all necessary and usual charges provided for by ordinance or resolution. Any excess of revenues above statutory, necessary and usual charges may be applied to the payment of amounts due and unpaid out of the revenues of former years. Police juries and municipal corporations shall also have authority to make, in any year, agreements or contracts, dedicating, in whole or in part, the excess of annual revenues of subsequent years, above statutory, necessary and usual charges, provided no such agreement or contract shall have any longer term fixed for payments than ten years from the date of the agreement or contract; and provided, further, that no dedication of future revenues shall be made, which, alone, or with other prior dedications in force, shall exceed the estimated excess of revenue over the statutory, necessary and usual charges of the year in which the agreement or contract is made."

And there is another proviso to the effect that the act is not to be construed as applying to funds derived from miscellaneous or contingent sources.

"Sec. 3. * * * That parishes and municipal corporations shall have authority to issue certificates of payments covering that portion of the cost of public improvement which, by existing laws, is to be borne by parishes, and municipalities, under contracts payable out of the revenues of subsequent years, as provided for in section 2 of this act. Such certificates shall bear such rate of interest as may. be fixed by the contracts under which they are issued, but said certificates shall have no other effect than to furnish prima facie evidence that the contractor is entitled, for work done at the prices fixed by the contracts, to a fixed amount of money, provided all stipulations of the con-

tracts under which such certificates have been issued have been complied with."

Section 4 authorizes municipalities to borrow money in emergencies, the repayment thereof to constitute a charge upon the revenue of the following year.

"Sec. 5. * * * That no evidence of indebtedness or warrant for the payment of money shall be issued by any officers of any parish or municipal corporation, * * * except against money actually in the treasury; * * * provided that this shall not apply to the certificates of payment authorized to be issued under section 3 of this act or to certificates issued to persons or witnesses for their services in the courts."

[3] The act quoted is rather involved in some respects, but it is entirely clear to the effect that parishes and municipal corporations are not to make appropriations, approve claims, or make expenditures against the revenues of a particular year, which exceed such revenues; that no parish or municipal officer is to issue any "evidence of indebtedness of warrant for the payment of money," except against money actually in the treasury; and that the certificates which are authorized to be issued are to be strictly nonnegotiable, and are to serve merely as prima facie evidence that the amounts represented by them are due, provided the stipulations of the contracts, under which they may have been issued, were complied with. The act is therefore in accord with the general policy of the state that parishes and municipal corporations shall in the main keep within their revenues and shall issue no evidences of indebtedness or negotiable paper. It is true that it contemplates the incurring of debt by parishes and municipal corporations, without the consent of the property taxpayers obtained in the manner prescribed by article 281 of the Constitution; but, as we have already intimated, we are of opinion that the purpose of that article is to deal with the subject of the creation by the political subdivision mentioned in it of bonded debts, and not of such debts or obligations

as they may incur in the daily administration of their affairs, or, without the issuance of negotiable paper, with reference to their current revenues, derived from the general fund tax, of 10 mills, which they are authorized to levy. The whole idea of the article is to prescribe the conditions upon which negotiable bonds may be issued; and the first condition is that the property taxpayers shall consent to the incurring of the debt which is to be funded, and to the issuance of the bonds which are to be used for that purpose. No other debt than that which is to be thus funded is, as we think, contemplated by the article, and the granting of permission to incur a bonded debt upon certain prescribed conditions does not compel, or authorize, the inference that it is thereby intended to prohibit the incurring of any debt whatever, save upon the observance of the same condition. Such a construction would be unreasonable, since a parish or municipal corporation, like an individual, must either incur debt constantly, or else pay in advance for everything that it gets. The next condition prescribed by the article is that the property taxpayers shall approve the levy of a special tax for the payment of the bonds to be issued, and we hold that this condition is prescribed, although the article does not so declare in specific terms because it would be inconsistent with the public policy of the state, as enunciated in all of its laws, constitutional, and statutory, to authorize such subdivisions as those to which the article relates to incur bonded debts without requiring them to make specific provision for their payment, and because the provisions with regard to the levying of the tax coincide with those relating to the incurring of the debt and the issuing of the bonds; the whole being dealt with as one and the same matter. This question has heretofore been considered in a case in which it was said:

"In our view, those provisions [referring to the provisions of article 281 of the Constitu-

tion] are clear, explicit, and susceptible of but one interpretation; and that is that the debt to be secured must be contracted subsequent to the action of the voters authorizing the levy of a special tax that the bonds can only be predicated upon such special tax. * * *" Callaghan v. Town of Alexandria, 52 La. Ann. 1019, 27 South. 540.

Restating our conclusions upon the questions which have been considered, they are that article 281 of the Constitution prescribes the conditions upon which, and the method by which alone, parishes and other public bodies mentioned therein can obtain authority to issue negotiable bonds; that, by necessary implication, and in express terms, the article prohibits the issuance of such bonds upon any other conditions than those so prescribed; that the General Assembly has no power to authorize that which the Constitution prohibits, and hence cannot authorize the police jury of a parish, without the consent of the property taxpayers, obtained as required by article 281 of the Constitution, to issue negotiable bonds for the funding of a floating debt incurred without such consent; that Act 129 of 1910, purporting so to authorize the police jury of the parish of West Feliciana, is unconstitutional and void; that the granting by said article of permission to a parish to incur a bonded debt upon certain prescribed conditions does not compel or authorize the inference that it is thereby intended to prohibit the incurring of any debt whatever, save on compliance with the same conditions.

These conclusions render it unnecessary that we should decide the other question presented, and we pretermit its consideration.

For the reasons thus assigned, it is ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that plaintiff's demand be rejected and this suit dismissed, at its cost.

PROVOSTY, J., dissents.