245 So.2d 398

**C. P. LITER**

v.

**CITY OF BATON ROUGE and Parish of East Baton Rouge.**

**No. 51081.**

Feb. 24, 1971.

Rehearing Denied March 29, 1971.

David Ellison, Jr., Baton Rouge, for plaintiff-appellant.

Joseph F. Keogh, Parish Atty., Edward V. Fetzer, Asst. Parish Atty., Benton & Moseley, Fred G. Benton, Sr., Fred G. Benton, Jr., Baton Rouge, for defendants-appellees.

Dodd, Hirsch, Barker, Avant & Wall, John L. Avant, Baton Rouge, for amicus curiae.

McCALEB, Chief Justice.

In this suit, C. P. Liter, a citizen and taxpayer of the City of Baton Rouge and the Parish of East Baton Rouge seeks to enjoin the collection of sales and use taxes levied by the city and the parish, and to

further enjoin these political subdivisions from funding any of the proceeds of the taxes into bonds.

From a judgment dismissing the suit plaintiff prosecutes the instant appeal.

Pursuant to Constitutional authorization [Art. 14, Sec. 3(a)], the City of Baton Rouge and the Parish of East Baton Rouge operate under a "Plan of Government" which became effective January 1, 1949. Section 1.3 of the Plan provides that "The City of Baton Rouge shall continue its existence as a political subdivision of the state and a body corporate under its charter as heretofore enacted except as the same is inconsistent with the provisions of this plan of government. * * *"

Section 3.02 of the plan further declares that:

"The City of Baton Rouge as extended by this plan of government shall continue to have all the powers and duties, except as provided in this plan of government, heretofore possessed by the City of Baton Rouge under its charter and the general laws of the state, and such other powers and duties not inconsistent with this plan of government as hereafter may be conferred or imposed on municipalities of the same population class. All provisions of the charter of the City of Baton Rouge not in conflict with the provisions of this plan of government are expressly continued in force and effect * * *."

We concur with the holding of the trial judge (and it is not assailed by the appellant) that that part of Section 20 of Act 169 of 1898, as amended by Act 334 of 1946, which sets forth the City's taxing power is not in conflict with any of the provisions of the plan and, that consequently, it contains the City's authorization to impose taxes. The pertinent part thereof provides:

"The Council shall have the power to enact all laws and ordinances necessary for the general welfare of said corporation, and the inhabitants thereof; and to this end, the Council is specially empowered to pass ordinances; * * * to levy taxes, licenses and assessments; to levy, impose and collect any and all kinds and classes of taxes or licenses or fees that may be imposed that are necessary for the proper operation and maintenance of the municipality, provided same is not expressly prohibited by the Constitution of the State of Louisiana * * *."

On December 10, 1969 the City Council passed an ordinance providing for the levying of a sales and use tax at the rate of 1%, this, in addition to a similar existing tax of 1¼%. On March 25, 1970, by Ordinance No. 2473 the Council effected a reduction in amount of the tax to ¾%. The latter ordinance further provides that: At least 66⅔% of the newly imposed tax should be budgeted and expended for capi-

tal improvements, the balance to be used for general municipal purposes.

On January 14, 1970 the Parish Council of East Baton Rouge Parish adopted an Ordinance (No. 3212) which provided for the levying of a 1% sales and use tax "to become effective when authorized by appropriate action of the Legislature" of the state, in addition to 1¼% tax then being collected.

On July 22, 1970 the ordinance was amended and reenacted by Ordinance 3400 so as to provide for only an additional ¾% sales and use tax. Like the city ordinance, it also provided that at least 66⅔% of the additional millage should be used for capital improvement. Ordinance 3400 provided that it should become effective September 1, 1970.

This parish tax was levied purportedly under the authority of Act 559 of 1970, which granted to the Parish of East Baton Rouge the right to levy a 2% sales and use tax. [The parish had theretofore been authorized to levy such a tax only in the amount of 1¼%. (LRS 33:2741).] The act was *passed* by the legislature subsequent to the adoption of Parish ordinance 3212, but *prior* to its amendment and reenactment by Ordinance No. 3400. However, it did not become *effective* until July 29, 1970 *after the adoption of both ordinances.*

At the same session of the legislature, by Act 561 of 1970, the City and Parish were authorized to fund into negotiable bonds proceeds of the sales and use tax collected by them, respectively. The act also recognized the right of these subdivisions to enter into joint construction of projects to be so funded by way of a "local Service Agreement" between them as was authorized by their Plan of Government and general law.

Pursuant to the authority granted by Act 561 of 1970 the Councils of the respective political subdivisions on August 26, 1970 adopted resolutions authorizing the issuance and sale of bonds, secured by a pledge of the avails of the sale and use taxes. (No. 3390 of the City and 8969 of the Parish) This suit ensued.

In the brief filed in this Court the plaintiff reurges the numerous attacks made in the district court on the validity of the various statutes, and the ordinances and resolutions of the respective Councils, which are set out in the brief as "specifications of error" and shall be so referred to hereafter.[1] Also a brief has been filed in this court by John Bourg, Sr. as amicus curiae, in which he joins with plaintiff in one of the points at issue, as will be hereafter shown.

---

1. No attack is made on the regularity of the procedure followed in the adoption of the ordinances or resolutions.

Plaintiff urges first that Section 20 of Act 169 of 1898, as amended, does not constitute adequate legislative authority to the City of Baton Rouge to enact the sales tax in question. He argues that:

"What was intended by the Legislature in 1898—a time more than 50 years before sales taxes were dreamed of was to permit the City of Baton Rouge to levy the 7 mills general alimony tax now found in Article XIV, Section 12, of the Constitution of 1921."

▮ There is no merit in this argument. Prior to Act 334 of 1946, the city, with regard to its taxing powers, was granted the right to "levy taxes, licenses and assessments." (See Act 224 of 1938). The much broader language presently in effect was added by the act of *1946*. It could have been for no other purpose than to remove any doubt as to the broad power intended. This conclusion strengthened by the fact that the language added in 1946 was identical to that contained in the Charter of the City of New Orleans, and which was successfully relied on to sustain the validity of the imposition of a sales and use tax imposed by the City of New Orleans. Mouledoux v. Maestri, 197 La. 525, 2 So.2d 11, decided by us in 1941.

Next plaintiff urges that if the language of the taxing authority granted to the city is so plenary, it is so extraordinary as to be equivalent to the surrender and abandonment of its taxing power by the legislature in violation of that part of Article X, Section 1 of the Louisiana Constitution of 1921, which declares that: "The power of taxation shall be vested in the Legislature; shall never be surrendered, suspended or contracted away * * *."

This identical argument was answered in Mouledoux v. Maestri, supra, where it was pointed out that the same authority given by the legislature to the City of New Orleans was a "delegation" and not a "surrender" of the taxing power. Moreover, in Article X, Section 5 of the Constitution municipal and parochial corporations and other public boards are granted the right to exercise the taxing power for local purposes, under the authority of legislature, subject only to limitations otherwise provided by the Constitution. We find in the Constitution no limitations on the authority of the legislature to permit local governing bodies to impose sales taxes.

In this same assignment of error as well as in assignments of error Nos. 3 and 4, plaintiff urges that the only authority delegated to the City of Baton Rouge with regard to taxing powers is that found in LRS 33:2711 (Act 285 of 1950), the pertinent part of which provides that:

"Any incorporated municipality of the state is hereby authorized to levy and collect a sales and use tax not in excess of one per cent as hereinafter set forth."

The taxing authority granted by virtue of this enactment is thus limited to a levy of 1%, in addition to the further limitation that it be imposed only after approval of the majority of the qualified electors of the municipality. LRS 33:2712.

The trial court held that inasmuch as the city is governed by the provisions of its charter, these statutes do not apply to it and that, besides, LRS 33:2715 particularly exempts the city from its general provisions. The latter section reads:

"All laws or parts of laws in conflict herewith be and they are hereby repealed, but nothing herein contained shall amend, repeal or modify any special laws relative to the taxing power of particular municipalities."[2]

■■ But even without the language of Section 2715, relied on by the city, we do not believe that the general repealing clause of the 1950 act would have affected the right specifically granted to the city in its charter, as amended. It is well settled that repeals by implication are not favored. State ex rel. Grosch v. Echezabal, 220 La. 1101, 58 So.2d 398; and Fakier v. Picou, 246 La. 639, 166 So.2d 257. And a general statute does not repeal a special statute on the same subject matter "unless the intent

to repeal is so plain and evident that it cannot be doubted." State ex rel. Warren Realty Co., Inc. v. City of New Orleans, 226 La. 297, 76 So.2d 308. This is particularly so with regard to provisions of city charters granted by special acts of the legislature. Mouledoux v. Maestri, supra, and the cases discussed therein, and State ex rel. Ideal Savings & Homestead Ass'n. v. City of New Orleans, 186 La. 705, 173 So. 179.

■ We find nothing whatsoever in Act 285 of 1950, LRS 33:2711 et seq. (which permits municipalities, generally, to impose a 1% sales tax) indicating an intention on the part of the legislature to repeal the special provisions of the charter of the City of Baton Rouge, and are of the opinion that the immediate action of the legislature in amending the repealing clause at the special session reveals that it did not so intend. (See also LRS 33:2716) Consequently, we conclude that the ruling of the district court that the city's taxing power was in no way impaired by said general enactment is correct.

■ This holding also disposes of the contention of amicus curiae to the effect that the limitations of Act 285 of 1950

---

2. The proviso of the repealing clause was added by Act 18 of the 2nd Ex.Sess. of 1950. The "Reporter's Notes" relating to this section observe that there seems to have been some question as to the effect of a general repealing clause on the

right granted to the City of Baton Rouge in its charter, and that the proviso to the general repealing clause was added to "safeguard against a possible restriction on the authority of Baton Rouge."

amount to a constitutional restraint on the city's power to tax in excess of 1% and then only after approval of the electorate. His argument is based on the assertion that, when the City (with the Parish) adopted the City-Parish Charter form of government pursuant to constitutional authority and the plan (in Sec. 3.04) provided that: "The power or duty to perform any service * * * hereby granted to the * * * city council, shall in all cases carry with it the power to levy taxes and to borrow money within the limits prescribed by this plan of government and by the constitution and general laws of the state for the purpose of performing such service * * * "—the city became constitutionally bound in its taxing powers by the general laws of the state.

This position is unsound, because as heretofore shown, the general law of the state did not place a limit on the taxing power of the City. Hence, the City in levying the tax involved here did not violate any limit set by any general law applicable to it.

In Specification of Error No. 5 the plaintiff argues, alternatively, that, even if the city is authorized to impose such sales and use tax, Section 20 of Act 169 of 1898, as amended, authorizes the imposition only of such taxes as "are necessary for the proper operation and maintenance" of the municipality. He notes that the ordinance imposing the tax allocates at least 50% of the tax avails to be expended for capital improvements, and he argues that expenditures for capital improvements are not included in the phrase "operation and maintenance" of the municipality.

Plaintiff contends that the word "maintenance" is generally defined as "an act of maintaining; keeping up; supporting", citing the case of Orleans Parish School Board v. Murphy, 156 La. 925, 101 So. 268.

We do not consider that case controlling here. The question at issue therein was whether the salaries of janitors could be paid out of a fund dedicated to the "purchasing, construction, repairing and maintaining buildings for public school purposes." It was contended that they could, because the services of the janitors "maintained" the buildings. The court said that the word "maintaining" as used there meant "holding them, keeping them or preserving them in their existing state or condition", and that the work of the janitors did not tend toward that end.

We do not question the holding of that decision, on the basis of the provision involved therein. Nevertheless, the proper connotation to be placed on a word in interpreting its meaning does not depend on an isolated definition attributable to it. Rather, regard must be had to the word *and to the context in which it is used.* In our opinion the phrase "operation and maintenance" of the municipality as used

in the city's charter contemplates more than merely maintaining the "status quo" of the city and its properties.

Here, the taxing power involved granted by the Charter to the City Council is given in connection with its power to enact all laws and ordinances "necessary for the general welfare" of the city and inhabitants. Also in this connection the city is authorized to provide, among other things, an adequate water supply, to establish public squares and parks, wharves, docks and river terminals, to open new streets or broaden old ones and expropriate land for this purpose, to establish ferries and public schools, in addition to the furnishing of innumerable day-to-day services (such as fire and police protection). Surely it was not the intention of the legislature to permit (indeed, to expect) the council to engage in such numerous activities involving capital outlays and not to contemplate that the plenary taxing power granted to it would be used to finance such endeavors.

Accordingly, we conclude that right to levy taxes to be used in the "proper operation and maintenance" for the welfare of the City of Baton Rouge and its inhabitants clearly envisions the right to levy taxes to finance the growth and development of the city, including capital expenditures for that purpose.

In Specification of Error No. 6 plaintiff asserts that the parish ordinances (No. 3212 and 3400) increasing the sales tax levy by 3/4 of 1% was invalid for the reason that Act 559 of 1970 authorizing such increase did not become effective until July 29, 1970, but that the ordinances were enacted prior to such authorization—one on January 14, 1970 and the other on July 22, 1970.

We are concerned, of course, only with the latter ordinance, inasmuch as it amended and reenacted the former, and is controlling. It was adopted on July 22, 1970. It is true that the act authorizing the Parish Council to increase its sales tax from 1¼% to 2% did not become effective until July 29, 1970. However, reference to the legislative journals reveals that, by action of the Senate, the act (which originated as House Bill No. 820) was finally adopted on July 8, 1970. It appears, therefore, that when the parish council enacted the ordinance on July 22, 1970 its authorization was a "fait accompli", nothing but passage of time (until July 29, 1970) was required to bring about the effectiveness of the act.

Indeed, we think that it would be highly technical and unwarranted to annul the ordinance, for the reason that the council was without authority to increase the sales tax when it did so, particularly since the ordinance provided that it would not become effective until approximately one month after the assured legislative sanction. We decline to do so.

▮ Additionally, with regard to the Parish ordinances levying a sales and use tax in the parish, plaintiff urges in Specifications No. 7 and 8 that they are invalid because Act 559 of 1970 "does not grant or lawfully delegate the taxing powers attempted to be exercised" in the ordinances and that, if it does, then the power to levy a sales and use tax is a surrender and abandonment of the taxing power of the legislature in violation of Article X, Section 1 of the Louisiana Constitution.

These objections to the ordinances are groundless. Act 559 of 1970, in unmistakable terms, permits the parish to levy a 2% sales and use tax within the parish. And this grant to the parish is not in violation of Art. X, Sec. 1, for the same reasons heretofore given by us in connection with our discussion of the same attack made on the ordinances of the city. In fact the provisions of this statute are not nearly so plenary as those given to the city.

In Assignment of Error No. 9 plaintiff urges that "Under general constitutional principles of due process a tax authorized without a vote of the people is not sanctioned." He cites Article I, Section 1 of the Constitution of Louisiana which provides that:

"All government, of right, originates with the people, is founded on their will alone, and is instituted solely for the good of the whole. Its only legitimate end is to secure justice to all, preserve peace and promote the interest and happiness of the people."

▮ This provision is not authority supportive of plaintiff's broad claim. On the contrary, there is no provision of our constitution appropriate to this case requiring approval of the electorate as a basis for enactment of taxing statutes or ordinances of this nature. As pointed out in a concurring opinion of Mouledoux v. Maestri, supra, if the majority of the inhabitants of the city are averse to paying sales tax "their recourse is to elect a municipal council pledged to rid the city of the sales tax." It is our duty to interpret and apply the law; we have nothing whatever to do with the question of whether the sales tax is good or bad legislation for a majority of the inhabitants of the city or parish.

Nor is it of any consequence, as alleged by plaintiff that "in many statutes delegating a permissive sales taxing authority, an election is required." Suffice it to say, the one involved here does not.

▮ It is further urged (in Assignments of Error No. 10 and 11) that Act 559 of 1970 is unconstitutional as amounting to a surrender of the taxing power vested in the legislature in violation of Article X, Section 1 (heretofore quoted) because Act 561 of 1970 authorizes the funding of the sales tax revenues into bonds, and that when they are so funded they cannot be modified or reduced. Plaintiff refers to

Section 6 of Act 561 of 1970 which declares that, when obligations payable from the sales tax revenues shall have been issued, the statute and the ordinance or resolution imposing the tax shall be irrevocable until such obligation shall have been paid in full and shall not be subject to amendment in any manner which would impair or jeopardize the rights of the holders. Because of this, he argues, the case is distinguishable from the decision in Mouledoux v. Maestri. He further attacks the constitutionality of Act 561 of 1970 and the parish and city resolutions which authorize the issuance of bonds, pursuant to said act, for the same reason—that it amounts to a surrender of the taxing power of the state.

First of all, even if the provisions of Act 561 do constitute a surrender of the taxing power for the reasons suggested, the invalidity of *that* act (and the resolutions passed by virtue of its authority) would in no way render ineffective the provisions of Act 559 and the ordinance which imposed the sales tax pursuant thereto. The latter act is in no way dependent on Act 561. Consequently, were we to declare that the city and parish could not issue bonds and irrevocably pledge the sales tax revenues to retire such obligations, because it amounts to a surrender of the taxing power, the respective governing authorities could still levy the sales taxes authorized by other acts, because nothing in those other acts (the city charter and Act 559 of 1970) requires the funding of any part of the avails of the tax authorized.

But we do not believe that the provisions cited render Act 561 unconstitutional as being in violation of Article X, Section 1. We are of the opinion that pledge of taxes for a limited time does not amount to a "surrender" of the taxing power as that term is used in the constitution. Of course, if the irrevocability were unlimited or the period is so long to make it virtually unlimited, then it is conceivable that such an enactment might be held to constitute at least a partial surrender of the taxing power.

That situation is, however, not presented here. Moreover, Article X, Section 1 must be read in connection with Article XIV, Section 14 of the Constitution, which specifically authorizes parishes and municipal corporations to incur debt and issue negotiable bonds, and, in addition to all other taxes, to impose and collect a tax sufficient to pay the principal and interest falling due annually.

In Assignments of Error No. 13 and 14, which are discussed together in plaintiff's brief, he sets forth a number of reasons why the city and parish resolutions authorizing the issuance of bonds are invalid. One of these is that they are defective because they were passed without approval of the taxpayers at a bond election, as re-

quired by the provisions of Article XIV, Section 14(a) of the Constitution.

In dismissing this contention as being without merit, the district court held that Article XIV, Section 14(a) refers only to general obligation bonds secured by an ad valorem tax.

We find nothing whatsoever in the language of this provision which so limits its effect. It reads:

"Municipal corporations, [and] parishes * * * may incur debt and issue negotiable bonds, when authorized by vote of a majority in number and amount, of the property taxpayers qualified to vote under the Constitution and laws of this State, who vote at an election held for that purpose, * * * and the governing authorities of such subdivisions shall impose and collect annually, in excess of all *other* taxes, *a tax* sufficient to pay the interest annually or semi-annually and the principal falling due each year, or such amounts as may be required for any sinking fund necessary to retire said bonds at maturity * * *." (Emphasis and brackets ours)

■■ This language is extremely general, and that portion with permits imposition and collection of *"a tax"* in excess of "all *other* taxes", in our opinion, manifestly

contemplates bonds supported by more than one kind of tax.[3]

We observe that in the election required, only property taxpayers are permitted to vote. But this provision does not compel the conclusion that only ad valorem tax-supported bonds were contemplated, because until recent decisions of the United States Supreme Court (see particularly Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647), virtually all bond-authorizing enactments requiring voter approval, contained the same voter limitation even though the bonds were not necessarily to be supported by ad valorem taxes. See LRS 33:4251, 4252, 4258, LRS 39:501 and 39:991, 992 and 997 [which has now been given constitutional status, Article XIV, Section 14(b.3)].

In Police Jury v. Stafford, 129 La. 455, 56 So. 366 (1911), it was urged that the legislature, prior to the adoption of this provision (by Article 281 of the Constitution of 1898), had the authority to permit state subdivisions to incur indebtedness and secure their payment by the issuance of tax supported bonds, inasmuch as no constitutional provisions had theretofore dealt with the subject to prevent such legislative grant, and that the purpose of the article was to give to the local governing bodies

---

3. Besides, paragraph (e) of this same Article and Section specifically treats of the right of parishes and municipalities to fund into bonds the avails or residue of "the tax *authorized by this Constitution*", which would be ad valorem taxes provided for in Article XIV, Sections 11 and 12, and Article X, Section 10.

the right to issue tax supported bonds on a vote of the electorate without the authority of the legislature, leaving the general authority of the legislature unimpaired.

The court rejected the contention. It reviewed the prior existing law, and after a detailed discussion of the question; it held that:

"* * * We cannot, therefore, concur in the view that in providing such a tax the article leaves it open to the municipal corporation, parishes, etc., acting under the authority of the General Assembly to issue bonds, the issuance of which it prohibits; and, according to our view, the bonds provided for by the article *are the only bonds which the Constitution authorizes the political subdivisions mentioned to issue,* and the issuance of any other bonds by them is prohibited, not only by obvious and necessary implication, but, in as plain and unambiguous language as could well be employed.

"* * * but the fundamental law, as we have seen, prohibits the issuance of bonds by parishes, save under the conditions prescribed, which conditions the plaintiff was unble to comply with, and from compliance with which the General Assembly had no power to release it by any legislation, whether general or special.

"* * * The whole idea of the article is to prescribe the conditions upon which negotiable bonds may be issued; *and the first condition is that the property taxpayers shall consent to the incurring of the debt which is to be funded, and to the issuance of the bonds which are to be used for that purpose.*" (Emphasis ours)

Although distinguishing the cases, and maintaining the validity of the certificates for ordinary indebtedness there proposed to be issued by the Assumption Parish School Board, the court in Assumption Parish School Board v. Bank of Napoleonville, 168 La. 1118, 123 So. 802 (1929), specifically recognized the force and effect of the Stafford decision that the whole idea of Article XIV, Section 14(a) is to prescribe the conditions upon which negotiable bonds may be issued, and that the first condition is that the taxpayers consent to the incurring of the debt which is to be funded.

In McFatter v. Beauregard Parish School Board, 211 La. 443, 30 So.2d 197 (1947), the court citing the Stafford decision as authority held that:

"The constitutional provision above referred to, [Article XIV, Section 14(a)] authorizing the parish to incur the debt and issue the bonds, necessarily contemplates that the debt incurred for which the bonds are issued is not to be incurred under any other conditions than those therein prescribed." (Brackets ours)

The cases cited by the district court do not support its holding. LeBlanc v. Police Jury of Parish of Rapides, La.App., 188 So.2d 131, and Dupre v. City of Houma, La.App., 216 So.2d 576. No issue was raised in those matters as to whether or not an election would be required to approve the incurring of a bonded indebtedness by the govering authority, secured by a sales tax. In LeBlanc plaintiffs opposed a proposed development plan under the authority of LRS 51:1151 et seq., including the creation of a "Development Board", a corporation which under the statute would be authorized to issue *revenue bonds,* which bonds would be payable solely out of revenues and receipts of the corporation and in no event would be an obligation of the parish, or of the state. The principal contention was that the proposed plan violated the constitutional provisions prohibiting the lending or use of the credit or property of the state or any of its subdivisions to any corporation, person, etc. The holding of that case (that neither the credit of the state nor the parish was pledged) is in no way determinative of the issues here, although it might be pointed out that the court made a distinction between *revenue* bonds of such a *corporation,* for which the parish was not liable, and tax supported bonds.

In the Dupre case, plaintiffs sought to set aside *an election* approving the issuance of *revenue bonds.* The attack there was levelled primarily at the manner in which the election was called and held. Clearly, it has no application here.

Our decision in Police Jury v. Stafford, supra, was rendered in 1911. Thereafter, Article 281, as it appeared in the Constitution of 1913 contained an additional provision (Section 4), which authorized the governing bodies of municipalities and parishes "for the purpose of paving or improving streets or alleys, and for all municipal improvements, after making provision for the payment of all statutory and ordinary charges, may fund into bonds running for a period not exceeding ten (10) years, and bearing interest at a rate not exceeding five (5) per centum per annum, which bonds shall not be sold for less than par, the avails of the residue of the ten (10) mill *tax authorized by this Constitution."* (Emphasis added)

That amendment appears in substantially the same language as Article XIV, Section 14(e) of the Constitution of 1921. By virtue of this amendment governing bodies of municipalities and parishes may now issue bonds supported by taxes in accordance with its provisions. However, the proposed bond issue involved here was not authorized under the provisions of Article XIV, Section 14(e) and is not within its terms.

We therefore deem immaterial, the reference in defendants' brief to the fact that

certain specified cities have issued bonds without a vote of the electorate, and we do not pass on the validity of such local enactments authorizing such bonds. They may well have been issued under the authority of and in accordance with Article XIV, Section 14(e).

We are compelled to hold, therefore, that approval of the voters of the Parish of East Baton Rouge and of the City of Baton Rouge was a prerequisite to the authorization for issuance of bonds by the respective governing bodies, and that, absent such approval, Resolution No. 8968 of the Parish of East Baton Rouge and Resolution No. 3390 of the City of Baton Rouge are invalid and of no effect.

Having reached this conclusion, we deem it unnecessary to discuss the remaining alleged defects of the bond authorizations, contained in the other specifications of error.

We find in the record no direct attack on the validity of that part of Act 861 of 1970 which provides that the parish council or the city council might hold a referendum election to determine the sense of the qualified electors with regard to whether the council should or should not proceed with a particular project or projects in the Comprehensive Plan or as to the priority of such projects, and the manner of financing, but that "nothing herein shall be construed as requiring that the holding of a referendum be mandatory for the issuance of the obligations hereunder." However, it necessarily follows from what we have said heretofore that any such language, if its effect is to grant to the governing bodies involved herein the right to authorize the proposed bond issue without a vote of the electorate, would be ineffective as being in violation of Article XIV, Section 14(a) of the Constitution.

For the reasons assigned, the judgment of the district court, insofar as it holds valid and enforceable the bond resolutions of the City of Baton Rouge and the Parish of East Baton Rouge (Nos. 3390 and 9698, respectively) is reversed and set aside, and it is hereby declared that the said bond resolutions are null and void. In all other respects, the judgment is affirmed.

BARHAM, Justice (concurring in the result).

I specifically reject the dictum in Footnote 3 of the majority opinion.

Rehearing denied.

SANDERS, BARHAM and TATE, JJ., are of the opinion that a rehearing should be granted.