Dear Ms. Truly:
You have requested an opinion from us interpreting R.S. 23:101
et seq. with respect to a large national temporary employment services corporation that now desires to engage in activities which would require it to obtain a private [permanent] employment services license under these statutes. As a temporary employment services business, the corporation is presently exempt from having to obtain such a license under the R.S. 23:102(A) exclusion therefor; however, it appears that businesses to whom this corporation provides temporary employees are, often enough, sufficiently impressed by these employees that they wish to hire them on a full-time basis as regular, permanent employees and are willing to pay the temporary employment services corporation a fee for providing such employees. It is noted that this activity may incidentally help alleviate some of Louisiana's unemployment difficulties.
The problem you have described is with statutory and regulatory definitions and determinants as to who may be issued such a license. As you have pointed out, R.S. 23:101(5) currently provides the following definition:
 "(5) `Licensee' means an individual who has been issued a license by the Department of Labor to operate a private employment service in this state. Such individual shall be the owner of a company, a partner owning at least ten percent of a partnership, or an officer, director, or stockholder owning at least ten percent of a corporation."
This statutory definition, like an optical illusion, appears to be capable of reversible perspectives, and your agency's view of it at one time led to the adoption of an agency interpretation and policy regulation which still reads as follows:
 "If a business which engages in the operation of a private employment service in Louisiana is owned by a corporation, the person in whose name the license is issued must own 10% or more of the stock of the corporation; whether such person is an officer, director, or an untitled stockholder."
Louisiana Administrative Code, Title 40, Part XV, 101, I. The particular corporation to be licensed in the problem presented by your request, however, is a large, publicly-held corporation with assets in excess of $496 million and without anyone owning as much as 10% of the stock.
Corporate counsel for the corporation suggests that the clause "owning at least ten percent of a corporation" in the statutory definition of "licensee" is really intended to modify only the word "stockholder" which it immediately follows and not "officer" or "director," who then would not have to own 10% of the corporation to be the named "licensee."
You say that your agency does not find such corporate counsel's interpretation to be unreasonable and is considering a change in current regulatory policy regarding the definition. However, before making a final decision on such change in regulatory policy, you request legal guidance from the attorney general and his opinion as to whether the statutory definition of "licensee" in R.S. 23:101(5) requires that the licensee of a private employment service business owned by a corporation must own at least 10% of the stock of a such corporation or whether an officer or director of such corporation may qualify as the licensee, even if he owns no stock therein.
In construing statutory language, the general rule is that the words used in the statute will be read in their context and be given their common and approved usage in the English language. R.S. 1:3. Referring to recognized dictionaries for the common definition and meaning of such words to ascertain the intent of the legislature in using them in the statute is an approved method of interpretation. State v. Jenkins, 338 So.2d 276,281-282 (La. 1976). Words expressly given peculiar definitions in the statute itself become technical words or "terms of art" and are to be construed and understood according to such peculiar and appropriate meanings. R.S. 1:3; Lyons v. H. K. Ferguson Co., 16 So.2d 587, 591 (La.App. 1st Cir. 1944).
The obvious purpose of providing express statutory definitions of certain words for use in other substantive and procedural provisions of a statute is to create carefully-crafted legislation designed to be free from ambiguities, obscurities, and inconsistencies. Accordingly, Carlos E. Lazarus, a former law professor at the Paul M. Hebert Law Center at Louisiana State University, has offered the following advice to those charged with drafting legislative bills:
 "A. Avoid using different words to express the same meaning. For example, if `judgment' is used in one place, the word `decree' should not be used in another. Similarly, if `court' is meant and used in one section, it should not be referred to elsewhere by the word `judge'. Also, the use of the same word to express different senses is to be avoided. In this manner the opportunity for misinterpretation will be minimized."
Carlos E. Lazarus, "Legislative Bill Drafting," published in West's Louisiana Statutes Annotated: Revised Statutes, vol. 1, pp. XXIX through XXXIX, at p. XXX. To achieve this purpose, there must, of course, be consistency and precision between the special statutory definition of a word and the manner in which that word is used in the context of the other provisions of the legislation.
In this respect, a reading of R.S. 23:101-115 reveals that this particular legislation is anything but a paragon of clarity, precision, non-ambiguity, and consistency. For example, even though the statutory definitions are made subject to the usual "unless the context clearly indicates otherwise" formula in R.S.23:101, the word applicant is statutorily defined to refer to the job-seeker who uses an employment service for placement with an employer. However, in the context of the statute, the word applicant refers to the employment service business itself or its proposed nominal licensee in R.S. 23:105, 106, and 107 but then abruptly appears to follow the statutory definition in R.S.23:111. And given these uses in context, the use of the term applicant in R.S. 23:112(A)(2) and (3) seems to be completely ambiguous.
Still worse, with particular regard to your opinion request, is the usage of terms respecting who or what kind of entity this Part contemplates as being licensed to conduct an employment service business. The implication apparent in R.S. 23:108(B), 109(B), and 113 is that the license is to be issued to a "person" in order to make valid the operation of an employment service by such "person". "Person" is defined in R.S. 23:101
(1) as meaning "any person, as defined in R.S. 1:10, or agent thereof, including an individual company, corporation, or partnership." R.S. 1:10 provides that unless it is clearly indicated to be otherwise, the word person, as used throughout the Louisiana Revised Statutes, includes a body of persons, whether incorporated or not. According to these provisions, if the employment service entity is a corporation, the corporation itself is required to be licensed in order to operate as an employment service.
In accord with this view is the use of the term employment service within R.S. 23:108(A), 111, and 112(A)(5), all as amended as recently as Act No. 633 of the 1992 Regular Session (made effective January 1, 1993). Moreover, R.S. 23:112(B) even refers to each "licensed employment service." "Employment service" is defined by R.S. 23:101(2) as a "person."
On the other hand, R.S. 23:106(A)(1), (2) and (3) and (B) and 112(A)(4) use the term licensee, which in turn is defined as an "individual" in R.S. 23:101(5). And R.S. 23:104, as amended by Act 633 of 1992, uses both "person" (in its first sentence) and "individual" (in its fifth sentence).
It appears that legislative attempts at clarification of this oft-amended statutory scheme do not result in the precision, non-ambiguity, and consistency generally desired in legislation. Immediately prior to the 1992 amendments, which defined R.S.23:101(5) in its present form quoted hereinabove, R.S. 23:101(5) defined the word licensee as
 "an individual, company, corporation, or partnership, licensed according to the provisions of this Part; or any individual, partner, officer, director, or stockholder owning ten percent or more of the stock of a corporation, operating an employment service in accordance with this Part."
See Act 791 of the 1987 Regular Session.
Moreover, the current use of the word individual in R.S.23:101(5) defining a "licensee" is itself ambiguous. As references to lexicons — including Webster dictionaries, Black's Law Dictionary, and West's Words and Phrases — show, the word individual may or may not include a corporation or a particular body of several persons; it often refers to a particular entity — be it a corporation or otherwise — as opposed to the class or species to which that particular entity belongs. More often, the term natural person is used to distinguish a single human being in the law from a corporation, partnership, unincorporated association or the like, which is usually designated by the term artificial person. The term natural person, however, is not used in R.S. 23:101 et seq.
Although this legislation is not entirely unintelligibly vague and its overall purpose and object is clear, an exact limitation, if any, on who or what kind of entity is allowed to obtain a license is not cast with precision. Words of a statute should be construed in accordance with the purpose and reason — the "legislative intent" — of the act and not in such a way as would produce either a harsh or an unjust construction. Dept. of Hwys. v. Lykes Bros. S.S. Co., Inc., et al., 209 La. 381,24 So.2d 623 (La. 1945). A harsh and inequitable result could be argued from an absolute exclusion in the ability of a private employment service to obtain a license merely because it was a large, publicly-held, interstate corporation of which no one owned as much as ten percent. In such a case, the proper connotation to be placed on a word does not depend on an isolated definition attributable to it but rather on the context in which it is used. Liter v. City of Baton Rouge, 285 La. 175,245 So.2d 398, 403 (La. 1971). A statute should be interpreted as a whole to effect the legislative intent and should be construed in such a way as to reconcile, if possible, apparent inconsistencies so that each part is given effect. State v. Cazes, 262 La. 202, 263 So.2d 8, 12 (La. 1972).
Considering the purpose and object of the legislation to be the fair regulation of private employment services for the protection of employers who need employees, the protection of job applicants who need and seek employment, and the protection of the public at large, which needs a sound economy with high productivity and high employment rates, and considering the statutory scheme and language itself — including its legislative history, interim amendments, and past attempts at legislative clarification — we believe the intent of the legislature to be as follows: The employment service itself — be it a corporation, partnership, or sole proprietorship — must obtain a license to engage in the private employment service business, but while the license is to be issued to the employment service itself, which may possibly be an artificial person, the state regulatory agency must also be informed of an individual natural person who will be designated by the employment service as the one responsible to the agency for regulatory compliance by the employment service. The license shall contain that individual natural person's name, and the state regulatory agency may look to that person alone for serving notices, orders, etc. upon the licensed employment service. That individual natural person must also have at least a certain sphere of control and/or influence over the way in which the employment service conducts business (for example, being "the owner of the company" or "a partner owning at least ten percent of [the] partnership").
Given our view of this statutory scheme, the individual natural person to be named in a corporation's employment service license must be a stockholder owning at least ten percent of the corporation or an officer or director of the corporation, even though such officer or director owns no stock in the corporation. This conclusion follows from the respective spheres of corporate influence established by Louisiana laws on corporations. Ordinarily, a corporate shareholder alone does not necessarily have direct influence over the day-to-day business affairs of the corporation, although owning at least ten percent of the corporation might put him generally in the same category as a partner who owns ten percent of a partnership. Officers and directors of a corporation, however, are responsible for managing the business of the corporation, regardless of whether they own any stock themselves. See, generally, R.S. 12:71 et seq., 81 et seq., and 91 et seq. Thus, in our opinion, officers and directors of a corporation, even if they do not own stock therein, have the necessary minimum sphere of influence over the corporation's conduct of business, to fulfill the purpose and intent of R.S. 23:101(5), read in pari materia with rest of R.S.23:101 et seq., and one of them may be the individual named in the corporation's employment service license.
Consequently, it is our view of the statute that you may indeed make the administrative policy change mentioned in your request letter. However, please take notice that an attorney general's opinion may not be the final word on the matter, as only the courts in Louisiana possess the constitutional power to give final and definitive interpretations to statutory language. See, for example, State v. Dixon, 4 So.2d 591, 597 (La.App. 1st Cir. 1941).
Trusting this opinion has fully answered your request, we remain
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: THOMAS S. HALLIGAN Assistant Attorney General
RPI/TSH/bb 0871f