Michael F. WASSERMAN, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

Nos. 07–CT–741, 07–CT–742.

District of Columbia Court of Appeals.

Argued Oct. 15, 2008.

Decided Nov. 6, 2008.

Michael F. Wasserman, pro se.

Sidney R. Bixler, Assistant Attorney General, with whom Peter J. Nickles, Interim Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, and Rosalyn Calbert Groce, Deputy Solicitor General, were on the brief, for appellee.

Before REID, Associate Judge, FARRELL, Associate Judge, Retired, and KING, Senior Judge.

PER CURIAM:

Appellant was fined $100 each on two counts of having allowed his dog to be "on [a] public space" without a leash, in violation of 24 DCMR § 900.3. He argues that the regulation is invalid, because the Commissioners (the then-governing administrative body in the District of Columbia) adopted it before the relevant congressional enabling legislation took effect. He argues, in the alternative, that he was entitled to a jury trial on the charges. We affirm.

■ In 1961, Congress was asked to empower the Commissioners to require dogs to be leashed when in public in the District.[1] Recognizing that existing law posed "inhibitions" to the District's author-

---

1. The Commissioners, who governed the District from 1874 until the advent of home rule in 1975, had administrative powers only, with legislative powers reserved to Congress. *See, e.g., Smithson v. District of Columbia,* 42 App. D.C. 184, 185 (1914).

ity at the time to regulate the keeping and leashing of dogs in public,[2] Congress passed Public Law No. 87–227 on September 13, 1961, to be effective on October 13, 1961. It authorized the Commissioners "to regulate or prohibit the running at large of dogs...." *See* 75 Stat. 498. One day before that effective date, the Commissioners issued Order No. 61–1734, "reinstat[ing], effective October 13, 1961," prior regulations whose validity had been in doubt, including the one challenged here which bars permitting a dog "to be on any public space in the District, unless such dog is firmly secured by a substantial leash...."

Appellant argues that because the Commissioners issued their order one day before the enabling statute took effect, the "leash regulation is void" (Br. for App. at 5). We are not persuaded. In legal parlance, a void action is one having "no legal force or binding effect." BLACK'S LAW DICTIONARY 1411 (5th ed. 1979) (defining "void"). By its own terms, however, Order No. 61–1734 had no legal effect—would be "[in]effective"—until the next day, when the statute authorizing it took effect. In other words, the order "sp[oke] only from the time [it went] into effect." 5 E. McQuillin, MUNICIPAL CORPORATIONS § 15:36, at 253 (3d ed. 2004 rev.). The principle appellant cites from McQuillin— that no ordinance "can have force ... unless it emanates from the power existing in the municipal corporation *at the time of its adoption*," *id.* § 16.8, at 290 (emphasis added)—is not reasonably read to preclude steps taken toward placing a regulation into effect. Indeed, one definition of "adopt" (McQuillin's term) is precisely to "put into effective operation; as in the case of ... [an] ordinance...." BLACK'S, *supra*, at 45. The fact that the Commissioners' order was issued a day in advance

did not make nugatory a regulation fully authorized on the day it became effective.

In rejecting a functionally indistinguishable argument, the Louisiana Supreme Court has said:

> [W]e think that it would be highly technical and unwarranted to annul the ordinance ... for the reason that the council was without authority to increase the sales tax when it did so, particularly since the ordinance provided that it would not become effective until approximately one month after the assured legislative sanction.

*Liter v. City of Baton Rouge*, 258 La. 175, 245 So.2d 398, 404 (1971). We agree. *McClure v. Township of Oxford*, 94 U.S. 429, 24 L.Ed. 129 (1876), is not to the contrary. There a municipality jumped the gun on a state law, not yet effective, that allowed it to issue bonds if its residents approved the bond offer by election after receiving thirty days advance notice of the vote. The bonds were "irregularly issued," the Supreme Court held, because the municipality had scheduled the election before the enabling statute took effect: "No valid notice of an election could be given until the act went into effect, because until then no officer of the township had authority to designate the time or place of holding it." *Id.* at 433. Here, the Commissioners took no action comparable to the unauthorized scheduling of an election. No one disputes that they had power to issue orders as such (a conventional means by which they governed). And the order in question imposed no duty or prohibition—"no one [was] bound to regulate his or her conduct according to its terms ...," 82 C.J.S. *Statutes* § 388, at 543 (1999)—until its effective date, when the Commissioners' authority to put it in operation was clear. In short, appellant's "technical and unwarranted" application of the voidness doctrine, *Liter, supra*, does

---

2. *See* S.REP. NO. 87–789, at 1 (1961).

not overcome the presumptive validity of the dog-leash regulation. *See Hoffenberg v. Kaminstein,* 130 U.S.App. D.C. 35, 36, 396 F.2d 684, 685 (1968).

Appellant's remaining argument is that he was entitled to a jury trial, even though the dog-leash regulation subjected him to a maximum fine of $300 or imprisonment for not more than ten days. His reliance on D.C.Code § 16–712(a) (2001), permitting a sentencing judge to impose the additional requirement of up to five years of community service upon conviction "of any offense," amounts to a claim— as appellant recognizes—that *every* crime under the D.C.Code is jury demandable, a plainly untenable position. *See generally Blanton v. City of North Las Vegas,* 489 U.S. 538, 541–42, 109 S.Ct. 1289, 103 L.Ed.2d 550 (1989); *In re Robertson,* 940 A.2d 1050 (D.C.2008); *Olafisoye v. United States,* 857 A.2d 1078 (D.C.2004).[3]

*Affirmed.*

---

**3.** Court-ordered community service is not, as appellant argues, involuntary servitude barred by the Thirteenth Amendment. *See, e.g., Herndon by Herndon v. Chapel Hill–Carr-* *boro City Bd. of Educ.,* 89 F.3d 174, 181 (4th Cir.1996); *Moss v. Superior Court,* 17 Cal.4th 396, 71 Cal.Rptr.2d 215, 950 P.2d 59, 68–69 (1998).