(112 So. 718)

No. 28528.

**STATE ex rel. BAHNS et al. v. CITY OF NEW ORLEANS.**

April 25, 1927.

*(Syllabus by Editorial Staff.)*

1. **Constitutional law ⬤⟿70(3)—Expediency and wisdom of legislative act are questions addressed solely to discretion of Legislature (Act No. 195 of 1926).**

Expediency of act, and question whether it was wise or unwise to increase salaries of judges, under Act No. 195 of 1926, were questions addressed solely to discretion of lawmaking branch, and not to judiciary.

2. **Judges ⬤⟿22(2)—Act increasing salaries of judges of city courts of New Orleans held unconstitutional, in so far as it directs payment of increased salaries out of judicial expense fund (Act No. 195 of 1926; Const. 1921, art. 3, § 34; art. 7, §§ 90, 92, 95).**

Act No. 195 of 1926, enacted under Const. 1921, art. 3, § 34, increasing salaries of judges of first and second city courts of city of New Orleans, fixed by Const. 1921, art. 7, §§ 90, 92, *held* void in so far as it directs payment of increased salaries out of judicial expense fund of parish of Orleans, since it violates Const. 1921, art. 7, § 95, vesting control of said fund in civil district judges, in view of Const. 1879, art. 146, Const. 1898, art. 156, and Const. 1913, art. 155, all of which Constitutions assumed unconditional control of such fund.

3. **Constitutional law ⬤⟿6—Manner of proposing and adopting amendments to Constitution, provided by Constitution, is exclusive (Const. 1921, art. 21, § 1).**

Manner of proposing and adopting amendments to Constitution, as provided for under Const. 1921, art. 21, § 1, is exclusive.

4. **Constitutional law ⬤⟿5—Act increasing salaries of judges of city courts of New Orleans held not "constitutional amendment" (Act No. 195 of 1926; Const. 1921, art. 3, § 34).**

Act No. 195 of 1926, increasing salaries of judges of first and second city courts of city of New Orleans, under permission granted Legislature by Const. 1921, art. 3, § 34, *held* not to be a "constitutional amendment," and cannot be given effect as such, or as superseding control of expense fund, as provided in art. 7, § 95.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Amend—Amendment.]

Appeal from Civil District Court, Parish of Orleans; Robert B. Butler, Judge ad hoc.

Proceeding by the State, on the relation of W. Alex Bahns and others, against the City of New Orleans, to compel payment out of the judicial expense fund of the additional salary allowed relators by an act of the Legislature, in which the Judges of the Civil District Court of the Parish of Orleans intervened. From a judgment dismissing the suit, relators appeal. Affirmed.

Harold A. Moise and Edward M. Heath, both of New Orleans, for appellants.

Betrand I. Cahn, City Atty., and Francis P. Burns, Asst. City Atty., both of New Orleans, for appellees city of New Orleans and others.

Joseph W. Carroll, of New Orleans, for interveners.

THOMPSON, J. The four judges of the first and second city courts of the city of New Orleans instituted this proceeding against the city to compel payment out of the judicial expense fund of the additional salary allowed said judges by an act of the Legislature of 1926 (Act No. 195 of 1926).

The five judges of the civil district court of the parish of Orleans, who were recused on account of interest, personal and official, intervened in the suit and alleged that the exclusive control of the judicial expense fund of the parish of Orleans was vested in them by the Constitution, and that said fund was dedicated to certain objects and purposes, specially enumerated, and that the act of Legislature, which sought to take away or to impair the control of said fund by the said judges, or to draft upon said fund for a purpose other than as stated in the Constitution, was and is unconstitutional, null, and void.

It is further alleged that said act of 1926 is unconstitutional for the reason that it was not presented to the Governor for his approval or disapproval as required by the Constitution, and that said act is unconstitutional, null, and void because not passed in accordance with the requirements of section 26, article 3, and section 15, article 5, of the Constitution of 1921.

The answer of the city sets up practically the same grounds of defense as contained in the intervention of the judges of the civil district court.

On a trial the demand of the relators was rejected and their suit dismissed.

The salary of the judges of the first and second city courts was originally fixed at $3,600 per annum, payable monthly on their own warrant, drawn on the state auditor. Sections 90 and 92, article 7, Constitution of 1921.

Section 34 of article 3 of the Constitution, however, authorized the Legislature to change the salaries of all officers, whether fixed in the Constitution or otherwise, by a vote of two-thirds of the members of each house.

Acting under the authority thus granted, the Legislature, by Act 195 of 1926, increased the salary of the judges of the first and second city courts to $5,000 each per annum, the additional $1,400 to become effective on August 1, 1926, and to be paid out of the judicial expense fund for the parish of Orleans, on the individual warrants drawn by the judges of said city courts.

[1] It may be stated at the outset that the court is not here concerned with the expediency of the legislative act under attack, nor with the question as to whether it was wise or unwise to increase the salary of the judges. That is a question addressed solely to the discretion of the lawmaking branch, and not to the judiciary.

The sole question we are called upon to decide is whether the Legislature had the authority, under section 34, article 3, to direct the payment of the increased salaries out of the judicial expense fund in the manner attempted by the act in question.

The theory and the argument of counsel for relators is that the Legislature has full authority to amend the Constitution under said section 34, article 3, and to enact such legislation as therein authorized to make effective a complete change of salaries, even though such legislation conflicts with the existing articles of the Constitution; in other words, that the act of 1926 does nothing more than change the salaries of the judges under the authority conferred, which authority car-

ried with it the power to provide how and out of what funds the increased salaries should be paid.

We find ourselves unable to accept counsel's interpretation of the act.

Unquestionably the Legislature, in the exercise of the authority delegated to it to change the salaries of officers, had the authority to provide the method for payment of such salaries and the fund out of which such payment was to be made, provided the fund was not otherwise appropriated.

This was an inherent power, not prohibited by the Constitution. There is nothing in the Constitution which directs that the salaries of the judges should be paid out of any particular funds of the state, and such salaries, in the absence of any specific requirement, are paid out of funds of the state specially appropriated and set aside by the Legislature for that purpose.

If the act of the Legislature went no further than to raise relators' salaries, there would have been no necessity for this suit. The increased salary would no doubt have been paid in the same manner as the original salary, after due appropriation therefor had been made by the Legislature.

The act, however, in our opinion, went beyond the mere change of salaries when it directed that such additional salaries should be paid out of a particular fund, which had been placed under the control of certain designated officials, and dedicated to certain specified and enumerated objects and purposes.

It therefore becomes necessary to consider whether the act at issue is in conflict with the article of the Constitution relating to the judicial expense fund, and, if it is, whether it can be regarded as a constitutional amendment, superseding in part the article governing the said fund.

The judicial expense fund of the parish of Orleans dates as far back at least as the Constitution of 1879.

In the Constitution of 1879 (article 146) it was provided that all fees and charges fixed by law for the various courts of the parish of Orleans and for the register of conveyances and recorder of mortgages shall inure to the state, and all sums so realized shall be set aside and held as a special fund, out of which shall be paid by preference the judicial expenses of the parish of Orleans.

In 1898 (Const. art. 156), the register of conveyances, recorder of mortgages, and the clerks of the city courts were required to report all fees collected to the controller of the city of New Orleans, and to pay into the city treasury the whole amount of fees and charges collected by them.

It was provided that the fund so derived was to be used to retire certain bonds issued against the judicial expense fund and to pay salaries and expenses of the offices from which said fund was derived.

A similar provision was contained in the Constitution of 1913, requiring the fees collected by the officers named to be paid into the city treasury, and out of which was to be paid the salaries of the said collecting officers and those of their deputies, as well as the expenses of said offices. These payments were to be made upon the warrant signed by the presiding judge of the civil district court.

Article 155 of the Constitution of 1913 provided that the control of the excess of the said judicial expense fund, after paying the salaries therein provided for and the salaries of such additional deputy clerks as may be authorized under the authority of the court, shall be vested in the judges of the civil district court for the parish of Orleans.

The Constitution of 1921 (section 95, article 7) provided that:

"The judges of the civil district court for the parish of Orleans, court en banc, shall have control over the judicial expense fund for the parish of Orleans, accruing and accrued, and to this end shall fix and regulate, from time to time, the number of deputies and employees of the offices of the clerk of the civil district court, the city courts, register of conveyances and recorder of mortgages of said parish and their expenses,

and also shall have power to fix the tariff of costs and charges to be paid for official services. * * *

"They [the judges] shall have power to determine, whether any amounts from said fund, or its excess, shall be devoted to the expense of taking testimony by shorthand and to regulate and provide for the same."

The judges were also authorized to contribute out of said surplus fund to the embellishment and maintenance of the courthouse and its furnishings.

We have referred to the provisions in the various Constitutions, for the purpose of showing that, beginning with the Constitution of 1879, all of the Constitutions have assumed unconditional control of this particular fund, and have provided how it should be expended, by whom expended, and for what objects. and purposes the said fund should be appropriated.

During this whole time, covering a period of nearly a half century, the Legislature has never attempted, so far as we are advised, to break in on this fund, and to appropriate any part of it to purposes other than specified in the several Constitutions, nor to arrest the control of said fund from the officers charged with its disbursement.

At no time in the history of the judicial expense fund has the Constitution or the Legislature essayed to pay any salary of any judge of the state out of this fund, except as provided in the Constitution of 1921 and the two acts of the Legislature of 1926, the one increasing the salaries of the judges of the civil district court and the act involved herein.

It is very clear, we think, that the act under consideration is in conflict, not only with the letter, but with the spirit, of section 95 of article 7 of the Constitution.

The act not only interferes with the control of said fund, vested by the Constitution in the civil district judges, en banc, but diverts a part of said fund to purposes other than specified in the said constitutional provision.

It was never intended, in our opinion, by the framers of the Constitution, that the control or administration of the judicial expense fund should be left to the Legislature, or that any part of said fund should be appropriated by the Legislature, otherwise than as fixed in the Constitution.

It has never been the policy of this state to pay the salaries of its judges out of a special fund derived from fees collected from litigants before the courts, and from notarial and mortgage office collections.

[2] We repeat, therefore, that Act No. 195 of 1926, if considered as a legislative act, and not as an amendment to the Constitution, is in conflict with section 95, article 7, of the Constitution, and is null and void in so far as it directs the payment of the increased salaries of relators out of the judicial expense fund of the parish of Orleans.

Having reached this conclusion, it is unnecessary to decide, and we do not decide, the question as to whether an act passed under the authority of section 34, article 3, is required to take the course of ordinary legislation and to be submitted to the Governor for his approval or disapproval.

We are not impressed with the contention of relator's counsel that the act of 1926 is a constitutional amendment.

The act does not purport to be other than an act of the Legislature.

It does not pretend to amend any article of the Constitution. Its title is to fix the salaries of the judges of the first and second city courts of the city of New Orleans. The title of the act does not even indicate how and out of what funds the said salaries are to be paid, whether by the state or out of funds in the treasury of the city of New Orleans.

[3] The Constitution, by section 1, article 21, expressly points out when and how amendments to the Constitution may be proposed and considered by the Legislature, and adopted by a vote of the people, when so submit-

ted. The manner of proposing and adopting amendments to the Constitution as thus provided is exclusive. The Constitution cannot be altered, changed, affected, or amended in any other manner, unless express and direct permission is given to the Legislature by the Constitution itself.

The permission to change the salaries of all officers was granted to the Legislature by section 34, article 3, of the Constitution. Hence there was no necessity for a constitutional amendment to effectuate the change in relators' salaries.

It would be doing a vain and useless thing for the Legislature to do, by means of a constitutional amendment regularly proposed and submitted for adoption by the people, what it could accomplish by direct legislation under a specific power delegated by the Constitution itself.

[4] We conclude, therefore, that the act of 1926 can in no sense be regarded as a constitutional amendment, and cannot be given the effect of such, or as superseding or affecting in any manner the control, designation, application, and appropriation of the judicial expense fund as provided in section 95, article 7, of the Constitution.

For the reasons assigned, the judgment appealed from is affirmed.