278 So.2d 474 (1973)
The POLICE JURY OF the PARISH OF WASHINGTON, State of Louisiana, Acting as the Governing Body of Industrial District No. 1 of Said Parish
v.
ALL TAXPAYERS, PROPERTY OWNERS AND CITIZENS OF INDUSTRIAL DISTRICT NO. 1 OF the PARISH OF WASHINGTON, State of Louisiana, Including Non-Residents Owning Property or Subject to Taxation Therein, and all Other Persons Interested in or Affected in any way by the Issuance of Industrial Revenue Bonds of the District and Albert G. Branch.
No. 53352.
Supreme Court of Louisiana.
May 24, 1973.
*475 Woodrow W. Erwin, Dist. Atty., Foley, Judell, Beck, Bewley & Landwehr, J. Hugh Martin, Harold B. Judell, New Orleans, for plaintiff-applicant.
Talley, Anthony, Hughes & Knight, Richard F. Knight, Bogalusa, for defendants-respondents.
Sanders, Miller, Downing & Kean, R. Gordon Kean, Jr., Kantrow, Spaht, Weaver & Walter, Byron R. Kantrow, Sr., Benton, Benton, Benton & Dodson, Fred G. Benton, Jr., Fred G. Benton, Sr., Taylor, Porter, Brooks & Phillips, Frank W. Middleton, Jr., Joseph F. Keogh, Parish Atty., Baton Rouge, Samuel C. Cashio, Dist. Atty., Cox, Huppenbauer, Michaelis & Osborne, John W. Cox, E. E. Huppenbauer, Jr., New Orleans, for amici curiae.
SUMMERS, Justice.
In order to encourage location of, and addition to, industrial enterprises in this State, the Legislature enacted Act 520 of 1964 (La.R.S. 39:991-1001). By the terms of that legislation, the governing bodies of taxing subdivisions of the State are authorized to issue bonds by resolution. These are to be "limited obligations" of these bodies, "the principal of and interest on which shall be payable solely from the income and revenue derived from the sale, lease or other disposition of the project or facility."
*476 It is further provided that the bonds issued in accordance with this Act "shall not constitute an indebtedness or pledge of the general credit" of the taxing body. Bonds issued under the Act's provisions, and the liability arising therefrom, are not a charge upon the other income and revenues of the issuing authority, and are not to be included in computing the indebtedness of the municipality for the purpose of determining any constitutional or statutory limitation. La.R.S. 39:992, 993.
The Act provides for an election to be held to approve the issuance of the bonds, approval to be by the vote of a majority in number and amount of the property taxpayers at an election called for that purpose. La.R.S. 39:993, 997. Provision was also made for the sale of bonds issued under that authority to the highest bidder at public sale. La.R.S. 39:998.
Thereafter, on November 8, 1966, in order to validate and thereby improve the marketability of industrial revenue bonds then authorized by law, "and without in any way depriving the Legislature of its right to amend R.S. 39:991 to R.S. 39:1001, inclusive," the provisions of Sections 991-1001 of Title 39 of the Revised Statutes were approved, ratified and made part of the Constitution of this State by an Amendment designated as Article XIV, Section 14(b.3).[1] By the terms of the constitutional amendment these provisions were given full effect as constitutional enactments. The amendment in explicit language found and declared that the purposes designed to be accomplished under those provisions (La.R.S. 39:991-1001) are public and proper legal purposes of public benefit to the taxing authority.
The Legislature, acting upon the authority reserved to it in the constitutional amendment, (La.Const. Art. XIV, Sec. 14[b.3]) enacted Act 433 of 1972, effective July 26, 1972, whereby it amended Sections 993, 996, 997, 998, 999 and 1000 of Title 39 of the Revised Statutes. These amendments sought to eliminate from Sections 991-1001, as then incorporated in the Constitution, the requirement that an election be held prior to the authorization and issuance of bonds under that authority. The amendments adopted by Act 433 of 1972 also purport to remove from Section 998 the requirement that bonds be sold at public sale, substituting in lieu thereof authority to sell the bonds at private sale.
Then, by resolution of October 11, 1972, pursuant to constitutional and statutory authority not at issue, the Police Jury of Washington Parish created Industrial District No. 1. In accordance with a lease agreement with Crown Zellerback Corporation, executed to conform with the terms of Sections 991-1001 of Title 39 of the Revised Statutes, the parish authorized acquisition of improvements to Crown's existing pulp and paper mill complex. These improvements were principally water pollution control facilities.
The lease was timely approved by the Board of Commerce and Industry and the State Bond and Tax Board as required by Section 997 of Title 39. The Police Jury of Washington Parish then issued $4,400,000 of industrial pollution control revenue bonds without an election.
*477 This suit was filed by the Police Jury of the Parish of Washington acting as the governing body of Industrial District No. 1, as authorized by Act 385 of 1972 (redesignated as La.R.S. 13:5121-30). The suit seeks judgment declaring the bonds to be valid obligations of Industrial District No. 1 and that all proceedings in connection with the authorization and issuance of the bonds and the lease agreement securing the payment of the bonds are legal, valid and binding.
Defendant Albert G. Branch, a resident, citizen and taxpayer of the parish of Washington, having a substantial interest in the subject matter, answered admitting the factual allegations, but denied the validity of the bonds or the lease agreement. Defendant's contest of the validity of the bonds is based upon two principal propositions and two alternative contentions:
(1) The Legislature was without authority to amend Sections 991-1001 of Title 39 by eliminating the election requirement. The clause, "without in any way depriving the Legislature of its right to amend R.S. 39:991 to R.S. 39:1001, inclusive" contained in Article XIV, Section 14 (b.3), is not broad enough to permit repeal of the election requirement.
(2) By adopting Article XIV, Section 14(b.3) the voters relied upon the requirement for an election contained in Sections 991-1001 of Title 39. That section of the Constitution is therefore a mandate that bonds be issued only after they are authorized in an election, which is required by the law as expressed in Liter v. City of Baton Rouge, 258 La. 175, 245 So.2d 398 (1971).
Alternatively, defendant alleges in his answer that (1) if it is found that the Legislature had the right to remove the election requirement, the amendatory act (No. 433 of 1972) was nevertheless inadequate to accomplish this purpose, for it contains no affirmative language authorizing the issuance of bonds without an election, and (2) Section 501 of Title 39, not amended by Act 433 of 1972, requires an election; and Section 992, also not amended, requires an election to fix the maximum interest on industrial revenue bonds.
The trial court gave judgment in favor of the District, rejecting defendant's contentions. On appeal to the First Circuit, the judgment was reversed and Act 433 of 1972, amending Sections 991-1001 of Title 39 of the Revised Statutes, was declared unconstitutional. 273 So.2d 597. We review this matter on certiorari, reverse the judgment of the First Circuit and reinstate and affirm the judgment of the trial court.

I.
The first principal contention asserts that the Legislature was without authority to amend Sections 991-1001 of Title 39 by eliminating the election requirement. The argument is that the clause, "without in any way depriving the Legislature of its right to amend R.S. 39:991 to R.S. 39:1001, inclusive" contained in Article XIV, Section 14(b.3), is not broad enough to permit repeal of the election requirement contained in Sections 991-1001 of Title 39. The claim is, in essence, that Act 433 of 1972 is unconstitutional.
In our view the reservation in Article XIV, Section 14 (b.3), of the Legislature's right to amend Sections 991-1001 of Title 39 is broad and all inclusive. The language of the clause invests the Legislature with unrestricted authority to amend those particular sections of the Revised Statutes to any extent it deemed proper in the manner ordinarily employed by that body to amend other statutes. Since there is no limitation on the right to amend in the language employed in Article XIV, Section 14 (b.3), that right applies to the repeal of the election requirement or any other amendment contained in Act 433 of 1972.
The argument is made that since Sections 991-1001 of Title 39 were accorded *478 constitutional status by the enactment of Article XIV, Section 14(b.3), those sections could not be amended except by the procedure prescribed in Article XXI, Section 1, of the Constitution calling for approval of all propositions to amend the Constitution by two-thirds of each house of the Legislature and by a majority of the electors at an election called for the purpose.
It is plain to this Court, and it is elementary proposition of constitutional law, that the Constitution may be amended by the people in whole or in part. Thus by the same process which gave Article XXI constitutional status, Article XIV, Section 14(b.3), was enacted. The latter article, reserving the right to the Legislature to amend Sections 991-1001 of Title 39, restricts this amending authority to the particular sections referred to. Article XIV, Section 14(b.3) does not purport to change the amending process of the Constitution except insofar as Sections 991-1001 of Title 39 are concerned. Article XXI, on the other hand, prescribes the general method of amendment.
In these circumstances, Article XIV, Section 14(b.3), being special, and later in point of time, is given effect as an exception to the general rule established for amendments by Article XXI. Arata v. Louisiana Stadium & Exposition District, 254 La. 579, 225 So.2d 362 (1969); State, Dept. of Highways v. Macaluso, 235 La. 1019, 106 So.2d 455 (1958); State ex rel. Kemp v. City of Baton Rouge, 215 La. 315, 40 So.2d 477 (1949); 2 Sutherland, Statutory Construction, § 5204 (3rd ed. 1943).
In other articles the Constitution has authorized amendment of its provisions by legislative act. Article III, Section 3, authorizes the Legislature to provide for the merger or consolidation of all executive and administrative offices, boards or commissions. By Article III, Section 34, salaries of public officers, whether fixed in the Constitution or otherwise may be changed by a vote of two-thirds of the members of each house. And by Article VII, Section 87, the Legislature is authorized to change, alter or repeal constitutional provisions dealing with the number of judicial districts and qualifications of judges in the criminal courts of Orleans Parish.
This Court has, furthermore, recognized the validity of constitutional provisions which authorize amendment or implementation by the Legislature. Stovall v. City of Monroe, 199 La. 195, 5 So.2d 547 (1941); State ex rel. Bahns v. City of New Orleans, 163 La. 777, 112 So. 718 (1927); State ex rel. Saunders v. Kohnke, 109 La. 838, 33 So. 793 (1903); Owen, The Need for Constitutional Revision in Louisiana, 8 La.L.Rev. 1 (1947).
There is, in fact, no limitation upon the power of the people of Louisiana to amend their Constitution in any respect, providing that the amendment does not conflict with the Constitution of the United States. Graham v. Jones, 198 La. 507, 3 So.2d 761 (1941); Louisiana Ry. & Navigation Co. v. Madere, 124 La. 635, 50 So. 609 (1909).
Thus insofar as Act 433 of 1972 eliminates the election requirement of Section 997 of Title 39, and insofar as it dispenses with the necessity for public sale of bonds as set forth in Section 998, it is a valid, effective amendment of those provisions by virtue of the constitutional authority reserved to the Legislature in Article XIV, Section 14(b.3).

II.
Conceding as defendant contends, and as this Court has held in Liter v. City of Baton Rouge, 258 La. 175, 245 So.2d 398 (1971), that the policy of this State strongly supports an election as a prerequisite to the issuance of bonds, we cannot agree that this principle is applicable in this case. The Liter Case involved the issuance of bonds payable from the proceeds of a general sales tax levied upon the sale at retail *479 and the use of tangible personal property, the tax to be paid by all who purchased or used that property within the jurisdiction of the tax levying authority.
The bonds involved in the case at bar are, by contrast, special obligation revenue bonds which only constitute a charge on the revenues derived from the lease, sale or disposition of the particular property in question. These bonds impose no charge against the general income and revenue of Industrial District No. 1. La.R.S. 39:993.
The distinction between general obligation bonds and special obligation bonds is significant here. The general obligation bond is required to contain provisions for a tax capable of insuring its payment. This bond, moreover, subjects the property and income of the taxing subdivision to levy in satisfaction of the obligation imposed thereby. For that reason the general obligation bond has invariably been required to receive approval at an election by the electors upon whom the tax will be imposed. A special obligation bond, which by its terms can never become a charge upon the general funds or property of a governmental subdivision, need not, for that reason, be subject to the requirement that its issuance be approved by the electorate. City of Redondo Beach v. Taxpayers, 54 Cal.2d 126, 5 Cal.Rptr. 10, 352 P.2d 170 (1960).
Generally the Louisiana Constitution requires an election to authorize the issuance of general obligation tax secured bonds. See La.Const. Art. XIV, § 14(a). There is no objection, however, to a constitutional provision delegating to the Legislature the authority to regulate the issuance of revenue bonds without an election. With respect to revenue bonds the Constitution provides: "The Legislature may in its discretion, require an election ... as a condition precedent to the issuance of such bonds ...." La.Const. Art. XIV, § 14(m). Under this authority, and the authority granted to the Legislature to amend Sections 991-1001 of Title 39, the requirement for an election prior to the issuance of these revenue bonds could be, and was by Act 433 of 1972, validly repealed.

III.
Notwithstanding a finding that the Legislature had the right to remove the election requirement, defendant argues that Act 433 of 1972 was incapable of dispensing with the election requirement, for it contained no affirmative language authorizing the issuance of bonds without an election.
The title of Act 433 of 1972 expresses its purpose to be, inter alia, "to eliminate the requirement of an election prior to authorization and issuance of the bonds...." In addition, the body of the act specifically eliminated from Section 997 of Title 39 all reference to any requirement of an election.
As Article XIV, Section 14(m), makes clear, "The Legislature may in its discretion, require an election ... as a condition precedent to the issuance of such bonds ...." A fortiori the answer to the contention is: in the absence of a requirement for an election, none is necessary.

IV.
Section 501 of Title 39 reads as follows:

Except as otherwise provided in special cases, no subdivision may incur any debt, issue any bonds, levy any special tax, or assume any indebtedness unless it has been authorized by vote of a majority in number and amount of the property taxpayers qualifified to vote under the constitution and laws of this state who vote at an election hereunder. The governing authority of any subdivision may call a special election for any of these purposes at any time; and it shall call an election for any of these purposes when requested to do so by the petition in writing of one-fourth of the property taxpayers eligible to vote. (emphasis added).
*480 The foregoing statute was not amended by Act 433 of 1972. And because it applies to the issuance of "any bonds", defendant contends it makes an election necessary before Industrial District No. 1 can issue the bonds in question which have been authorized and will be issued under the provisions of Sections 991-1001 of Title 39.
Aside from the fact that the apparent intent is that Section 501 should apply only to tax secured bonds, as distinguished from the revenue bonds in question, the case at bar comes within "special cases" excepted from Section 501's mandate.
The authority to issue industrial revenue bonds is governed by special provisions of law, more specifically Sections 991-1001 of Title 39 and Article XIV, Section 14(b.3), insofar as this case is concerned. These provisions, as amended, require no election for the issuance of revenue bonds. As we have found, the amendments eliminating the election requirement are valid. This bond issue and the proceedings authorizing same are within the contemplation of those "special cases" excepted from the requirements of Section 501.
And furthermore, Act 433 of 1972 eliminating the election requirement from Section 997 of Title 39 is the latest expression of the Legislature on the subject. The Act's repealing clause repeals "all laws or parts of laws in conflict ..." with its provisions. Section 501 of Title 39 can have no effect, therefore, to impose the requirement of an election prior to the issuance of these revenue bonds.
Defendant contends that Section 992 of Title 39, which was not amended by Act 433 of 1972, requires that the bonds "shall bear interest at a coupon rate or rates not exceeding the interest rate stated in the proposition submitted at the election required by R.S. 39:997 ...."
This language, defendant asserts, contemplates an election to fix the maximum rate of interest even if the election requirement has been eliminated for other purposes. Failure of the Legislature to repeal this provision, it is said, manifests an intention to retain the election requirement at least insofar as it concerns approval of the maximum rate of interest.
Our first impression is that Section 992 makes specific reference to the election required by Section 997, and, since Section 997 no longer contains an election requirement, no election is necessary to fix the rate of interest on these revenue bonds. Actually, we feel that the Legislature's failure to amend Section 992 to conform with the amendment in 997 was an oversight.
It is also to be noted that Act 433 of 1972 amended Section 997 to provide that "The maximum rate of interest at which bonds may be issued under this part shall not exceed the maximum rate for conventional interest fixed by the Louisiana Civil Code." In the light of this amendment, fixing the maximum rate of interest in an election to accomplish that same result would obviously be redundant.
Moreover, the apparent inconsistency in those two provisions is also reconciled by the repealing clause of Act 433 making ineffective all provisions of Section 992 which are inconsistent with Section 997.
Finally, Act 433 of 1972 amended Section 998 of Title 39 by eliminating the requirement that these bonds be sold to the highest bidder at a public sale. In lieu thereof the amendment provided that the bonds should be sold at a private sale, for not less than par and accrued interest after advertisement.
The authority to make this amendment rests upon the reservation in Article XIV, Section 14 (b.3), of the Constitution investing the Legislature with the unlimited right and authority to amend Sections 991-1001 of Title 39. It is the same authority which permitted the Legislature to amend those sections of the Revised Statutes *481 eliminating the election requirement. In this instance, however, the problem is not complicated by the factors relied upon by the defendant in his opposition to eliminating the election requirement. This determination is clear cut. Our research reveals no other relevant or nearly relevant provision of law, which could be considered applicable here, prohibiting the private sale of revenue bonds; or, to put it another way, which requires these bonds to be sold at public sale. Constitutional or statutory provisions fixing requirements for the sale of general obligation bonds are inapplicable to these special obligation revenue bonds.
For the reasons assigned it is ordered, adjudged and decreed that the judgment of the Court of Appeal, First Circuit, be reversed and set aside, and that the judgment of the trial court be reinstated and made the judgment of this Court.
DIXON, J., concurs.
NOTES
[1] La.Const. Art. XIV, Sec. 14(b.3) provides:

"To validate and thereby improve the marketability of industrial revenue bonds now authorized by law and without in any way depriving the Legislature of its right to amend R.S. 39:991 to R.S. 39:1001, inclusive, said law is hereby approved, ratified and made a part hereof, and given full effect as a constitutional enactment, it being hereby found and declared that the purposes designed to be accomplished under the provisions of said law are public and proper legal purposes and will be of public benefit to the municipal corporation, parish, taxing district or other political subdivision as the case may be. The legality and validity of any industrial revenue bonds heretofore issued pursuant to said law or for which the initial proceedings required thereby have been adopted prior to the effective date of this amendment are hereby ratified and confirmed."